UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AKB WIRELESS, INC.,

    Plaintiff/Counter-Defendant,

v.                                                                                  Case No. 14-13424

WIRELESS TOYZ FRANCHISE, LLC,                      Sean F. Cox
                                                                                    United States District Court Judge
    Defendant/Counter-Plaintiff/
    Third-Party Plaintiff,

v.

ALAN BAHNAM,

    Third-Party Defendant.
_____/

## OPINION & ORDER

This matter is currently before the Court on Wireless Toyz Franchisee, LLC's Motion to Dismiss AKB Wireless, Inc.'s Second Amended Complaint, which was brought pursuant to Fed. R. Civ. P. 12(b)(6). The Court finds that the issues have been adequately presented in the parties' briefs and that oral argument would not significantly aid the decisional process. *See* Local Rule 7.1(f)(2), U.S. District Court, Eastern District of Michigan. The Court therefore orders that the motion will be decided upon the briefs. For the reasons set forth below, the Court shall grant the motion in part and deny it in part. The Court shall grant the motion to the extent that it shall dismiss the Conversion Count (Count II) and the count that asserts an Action for Accounting (Count IV). The Court shall deny the motion in all other respects.

1

**BACKGROUND**

Alan Bahnam ("Bahnam") is an individual who entered into a Franchise Agreement, and other agreements, with Wireless Toyz Franchise, LLC ("Wireless Toyz"), so that he could open a franchise retail store in Florida. He later formed AKB Wireless, Inc. ("AKB") and assigned all of the rights and obligations under the Franchise Agreement from Bahnam to AKB.

This action was transferred to this Court on September 4, 2014, from the United States District Court for the Middle District of Florida. The action is in federal court based upon diversity jurisdiction.

AKB's First Amended Complaint (D.E. No. 2) asserted the following claims against Wireless Toyz: "Count I – Breach of Contract," "Count II – Violation of Michigan Franchise Investment Law," and "Count III – Breach of the Covenant of Good Faith and Fair Dealing."

Wireless Toyz then filed a two-count Counter-Complaint against AKB and a two-count Third-Party Complaint against Bahnam. They contain the same two counts: 1) a declaratory judgment claim; and 2) a breach of contract claim.

AKB and Bahnam filed a Motion to Dismiss challenging Wireless Toyz's claims. This Court issued an Opinion & Order on April 13, 2015 denying that motion. (*See* D.E. No. 33). Notably, in connection with that motion, AKB and Bahnam had wanted this Court to evaluate all of the various alleged breaches. This Court declined to take such an approach on a motion to dismiss, explaining:

> . . . Wireless Toyz has sufficiently pleaded a breach of contract cause of action against AKB and Bahnam. Whether Wireless Toyz can *ultimately prevail* on such a claim, is not properly before this Court on a Motion to Dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6). As Wireless Toyz's brief notes, AKB and Bahnam's motions make a litany of arguments as to why they believe Wireless

Toyz will not be able to prevail on its claims. (*See* D.E. No. 27 at Pg ID 1016) ("AKB's disingenuous arguments do not actually constitute challenges to Wireless Toyz's well-pleaded allegations, but, rather, at best, merely comprise affirmative defenses and factual and legal disputes for trial.").

In Bahnam's Reply Brief, he asserts that "even if this Court permits W[ireless] to assert a breach of contract claim based on the intra-term non-compete, W[ireless] should not be permitted to bring any of its other breach of contract claims." (D.E. No. 32). In other words, even if the Court concludes that Wireless has sufficiently pleaded a breach of contract claim against AKB and Bahnam based upon the allegations that they violated the non-compete covenants, they believe this Court should nevertheless go on to analyze their arguments as to any additional alleged breaches.

The Court disagrees and concludes that this argument misunderstands the nature of a Motion to Dismiss brought under Fed. R. Civ. P. 12(b)(6).

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal where the complaint fails to state a claim upon which relief can be granted. Dismissal is appropriate if the plaintiff fails to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"Nothing in *Twombly*, however, contemplates [such a] 'dismemberment' approach to assessing the sufficiency of a complaint. Rather, a district court must consider a complaint in its entirety without isolating each allegation for individualized review." *In re Pressure Sensitive Labelstock Antitrust Litig.*, 566 F.Supp.2d 363, 373 (M.D. Penn. 2008). As the Supreme Court observed in *Twombly*, "the complaint warranted dismissal because it failed *in toto* to render plaintiffs' entitlement to relief plausible." *Twombly*, 127 S.Ct. at 1973 n.14.

Wireless asserted a single "Breach of Contract" count against both AKB and Bahnam, that alleges that they breached the Franchise Agreement in more than one way. As set forth above, Wireless Toyz has sufficiently pleaded a breach of contract cause of action against AKB and Bahnam based upon the alleged violations of the non-compete covenants. As such, Wireless Toyz has sufficiently pleaded a breach of contract cause of action against both AKB and Bahnam. Accordingly, AKB is not entitled to dismissal of Count II of Wireless Toyz's October 22, 2014 Counterclaim against it and Bahnam is not entitled to dismissal of Count II of Wireless Toyz's Third-Party Complaint against him.

There is no need for the Court to further address AKB and Bahnam's arguments as to other alleged breaches because, even if they had merit, Wireless Toyz has still sufficiently pleaded a breach of contract cause of action against both AKB and Bahnam. It would not be appropriate for the Court – at the pleading stage – to go on to evaluate the litany of arguments and defenses raised

>in AKB and Bahnam's motions. Such arguments are more appropriate for the summary judgment stage of the litigation.

(D.E. No. 33 at 11-12).

On May 26, 2015, the Court issued a Scheduling Order in this action (D.E. No. 38) that provides that: 1) amendments to the complaint must be made by June 30, 2015; 2) discovery is to be completed by January 4, 2016; and 3) motions must be filed by February 8, 2016.

> **AKB's Second Amended Complaint**

AKB filed a Second Amended Complaint ("SAC") on June 30, 2015 (D.E. No. 39). AKB's SAC now contains the following counts against Wireless Toyz[1]: 1) "Breach of Contract" (Count I); 2) "Statutory and/or Common Law Conversion" (Count II); 3) "Breach of Fiduciary Duties" (Count III); 4) "Action for Accounting" (Count IV).

AKB's SAC alleges that "AKB entered into a franchise agreement with Wireless Toyz on or about July 3, 2017" and states that a "copy of the Franchise Agreement is attached hereto as Exhibit 'A.'" (SAC at 3 n.1). But Counsel apparently forgot to include the exhibit. Nevertheless, the Court has the July 3, 2007 Franchise Agreement because it was attached to AKB's First Amended Complaint. (*See* D.E. No. 2-1).

>> **1.    Breach of Contract Count**

In Count I of its SAC, AKB alleges that it "entered into a valid and enforceable Franchise

---

[1]Notably, the caption of that SAC lists Wireless Toyz as the only Defendant and in docketing the motion the filer marked "No New Parties Added." The first paragraph of the SAC, however, states that it is "against Defendant, Wireless Toyz Franchisee, LLC *and Joe Barbat*." (*Id*. at Pg ID 1484) (emphasis added). But Barbat is not listed in the section of the SAC titled, "Parties, Jurisdiction and Venue." (*Id.* at 2-3). As a result, the docket does not indicate that Barbat is a party in this action.

Agreement with Wireless Toyz." (SAC at ¶ 40). AKB alleges that "Wireless Toyz materially breached" the Franchise Agreement in the following ways: 1) "constructively terminating the Franchise Agreement by failing to transition to a single carrier business model;" 2) "actively converting Wireless Toyz locations to single carrier retailers under independent brand names and failing to promote the Wireless Toyz franchise system;" 3) "failing to provide the advertising, training, support and guidance called for under the Franchise Agreement;" 4) "wrongfully terminating the Franchise Agreement pursuant to its November 27, 2013 Notice of Termination;" 5) "failing to approve the substitute locations that AKB submitted to Wireless Toyz for approval;" and 6) "refusing to provide AKB $120,000 in commissions that Wireless Toyz owes to AKB under the Franchise Agreement." (SAC at 11-12).

### 2. Statutory and/or Common Law Conversion Count

Count II of the SAC asserts a claim for conversion. AKB alleges that it "earned certain commissions from carriers arising out of the sale of cellular services," and that those commissions "were provided by the carriers to Wireless Toyz, who in turn, deposited the amounts into a Commission Trust Account ('CTA')." (SAC at ¶ 45). It alleges that such funds "constitute money and/or property that belong to the individual franchisees including AKB." (*Id*. at ¶ 46). It claims that "Wireless Toyz has received approximately $120,000 in carrier commissions belonging to AKB that it has refused to distribute" and that "[o]n December 24, 2013, AKB notified Wireless Toyz in writing that it was wrongfully retaining" those funds and demanded the funds be provided to it but they were not provided to it. (*Id*. at ¶ 50-51). Through these acts, AKB alleges that Wireless Toyz "exercised domain [sic] over AKB's property in a manner that was inconsistent [with] it right and/or entitlement to said property." (*Id*. at ¶ 52) .

5

Count II cites a Michigan statute governing conversion, Mich. Comp. Laws § 600.2919a, and AKB alleges that it is entitled to treble damages under that statute. (SAC at ¶¶ 55-56).

### 3.     Breach of Fiduciary Duties Count

Count III of AKB's Second Amended Complaint, titled "Breach of Fiduciary Duties," alleges that:

> 59.    At all relevant times, Defendants, Wireless Toyz, Joe Barbat (and other potential officers) had control over the CTA.
>
> 60.    In managing and maintaining the CTA for the benefit of AKB and all franchisees, Defendant assumes common law fiduciary duties of good faith and loyalty towards AKB and its other franchisees with respect to the administration of the CTA.
>
> 61.    Defendants Wireless Toyz, Joe Barbat (and other potential officers) violated their fiduciary duties of good faith and loyalty towards AKB with respect to the CTA by failing and refusing to deliver to AKB the commissions that were owed to it and by misappropriating those funds for their own personal and/or corporate use.
>
> 62.    As a proximate result of the Defendants' violations of their fiduciary duties, AKB has been deprived of commissions that are owed and therefore suffered significant financial harm.

(SAC at 15-16).

### 4.     Action for Accounting Count

Count IV is titled "Action for Accounting" and it alleges that per the terms the parties written Franchise Agreement, "Wireless Toyz receives commission payments from AKB's cellular providers, which AKB earns as a result of its sales of the cellular providers' goods and services." (SAC at ¶ 64). AKB alleges:

> 65. Per the terms and conditions of the parties' franchisee agreement, Wireless Toyz obligated itself to pay AKB commission it received as a result of

AKB's effort in marketing and promoting and selling their wireless carrier's products and services.

66. On information and belief, Wireless Toyz has refused to honor its contractual obligations to pay AKB the commission paid to Wireless Toyz, which were earned by AKB through substantial efforts in marketing, promoting, and selling their wireless carrier's goods and services.

67. At all relevant times, Wireless Toyz purported to and received AKB's commission revenue in its CTA that it held, controlled and administered for the benefit of AKB and other franchisees.

68. Wireless Toyz failed and has refused to properly track and account for those revenues belonging AKB.

69. Upon information and belief, Wireless Toyz (according to its patterns and practices) has transferred and/or swept out of its CTA the commissions belonging to AKB.

70. Under the terms of the franchise agreement, Michigan Franchise Protection Act, and common law, Wireless Toyz owed AKB a duty to use skill and good judgment in managing the CTA and to provide full and complete information concerning deposit, withdrawals, and accrued interest.

71. Wireless Toyz has failed and refused to provide information, including financial information with regards to the AKB's fund deposited into and/or transferred out of the CTA.

72. In order to ascertain what amounts are due and owing to AKB and/or whether any amounts due and/or owing to AKB have been wrongfully misappropriated a full and complete reconciliation and/or accounting of Wireless Toyz CTA is necessary.

(SAC at ¶¶ 65-72).

**Wireless Toyz's Motion To Dismiss**

On July 15, 2015, Wireless Toyz filed a Motion to Dismiss AKB's Second Amended Complaint, brought pursuant to Fed. R. Civ. P. 12(b)(6). (D.E. No. 40).

**Standard of Decision**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *DirectTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In practice, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.  *Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996).

In adjudicating a motion to dismiss under Fed.R.Civ.P. 12(b) (6), the Court generally does not consider matters outside the pleadings. Nevertheless, Fed.R.Civ.P. 10(c) provides that a "copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." Fed.R.Civ.P. 10(c).  In this case, the exhibits to the parties' pleadings include the July 3, 2007 Franchise Agreement.  This Court may consider that document in deciding the pending Motion to Dismiss.  *Id.*; *see also Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335-336 (6th Cir. 2007).

**ANALYSIS**

Wireless Toyz's Motion to Dismiss challenges all four of the claims asserted against it in AKB's SAC.

## I.  Breach of Contract

Count I of AKB's SAC asserts a claim for breach of contract.  Count I alleges that "AKB entered into a valid and enforceable Franchise Agreement with Wireless Toyz."  (SAC at ¶ 40). Wireless Toyz agrees that the parties have a valid written Franchise Agreement.

In order to establish a breach of contract claim under Michigan law, the plaintiff must establish the existence of a valid contract, the terms of the contract, the specific actions that breached those terms, and the damages that the breach caused to the plaintiff.  *Brigolin v. Blue Cross Blue Shield of Michigan*, 516 F. App'x 532, 536 (6th Cir. 2013) (citing *In re Brown*, 342 F.3d 620, 628 (6th Cir. 2003)).

Wireless Toyz's position is that AKB cannot establish any of the claimed breaches in light of the express provisions in the Franchise Agreement.

In the SAC, AKB alleges that "Wireless Toyz materially breached" the Franchise Agreement in the following ways:  1) "constructively terminating the Franchise Agreement by failing to transition to a single carrier business model;" 2) "actively converting Wireless Toyz locations to single carrier retailers under independent brand names and failing to promote the Wireless Toyz franchise system;" 3) "failing to provide the advertising, training, support and guidance called for under the Franchise Agreement;" 4) "wrongfully terminating the Franchise Agreement pursuant to its November 27, 2013 Notice of Termination;" 5) "failing to approve the substitute locations that AKB submitted to Wireless Toyz for approval;" and 6) "refusing to provide AKB $120,000 in commissions that Wireless Toyz owes to AKB under the Franchise

Agreement."  (SAC at 11-12).

In ruling on the pending Motion to Dismiss, the Court does not need to rule on each of the various ways that AKB alleges that Wireless Toyz breached the parties' contract.  That is because if any one of those alleges breaches is viable, then the Breach of Contract Count should not be dismissed for failure to state a claim and the claim remains in the action.

AKB alleges that Wireless Toyz breached the franchise agreement by, among other things, "refusing to provide AKB $120,000 in commissions that Wireless Toyz owed to AKB under the Franchise Agreement."  (SAC at ¶ 41).  Wireless Toyz's brief argues that disputes regarding commissions owed are going to governed by the provisions in the Franchise Agreement.  (*See* Wireless Toyz's Br. at Pg ID 1528).  That is true.  But whether or not AKB is actually owed any commissions, even in light of the various contractual provisions, is a factual issue that will require the Court to look at matters outside of the pleadings.

In sum, this is a motion brought under Fed. R. Civ. P. 12(b)(6), brought prior to the close of discovery.  Wireless Toyz's challenges to AKB's breach of contract count are more appropriately raised at the summary judgment stage of this litigation.  This is especially so given that this Court already declined to analyze a motion to dismiss on a breach-by-alleged-breach basis earlier in this very same case.

**II.     Conversion**

Wireless Toyz's motion asserts that AKB's conversion count fails as a matter of law because, pursuant to the Franchise Agreement, Wireless Toyz lawfully exercised dominion and control over commission payments received from wireless carriers.  Indeed, as Wireless Toyz notes, AKB asserts that Wireless Toyz breached the parties' written contract by not paying AKB

$120,000 in commissions that it is owed under the contract.

In challenging this claim for statutory conversion, Wireless Toyz directs the Court cases that address statutory conversion claims that are based upon the alleged conversion of money:

> The common law tort of "conversion is defined as 'any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein.'" *Head v. Phillips Camper Sales & Rental, Inc*., 234 Mich. App. 94, 111; 593 N.W.2d 595 (1999) (Ex. I) . . . "To support an action for ***conversion of money***, the defendant must have had an obligation to return the specific money entrusted to his care." *Id*. (emphasis added).  That is, "[t]he defendant must have obtained the money ***without the owner's consent*** to the creation of the debtor and creditor relationship." *Id.* at 112 (emphasis added).

(Wireless Toyz's Br. at Pg ID 1532) (emphasis in original).  Wireless Toyz's motion asserts that the parties expressly agreed, in their written contract, that wireless carriers would remit commission payments to Wireless Toyz and that Wireless Toyz would possess and administer those commission payments as provided in the contract.  Thus, Wireless Toyz argues that it was contractually authorized to receive the commission payments at issue and it therefore did not come into possession of those payments without the putative owner's consent.

In response, AKB directs the Court to *Aroma Wines & Equip., Inc. v. Columbian Dist. Servs., Inc*., 2013 WL 6670573 (Mich. App. 2015).  Notably, however, that case has nothing to do with the alleged conversion of money.  Rather, it involves the alleged conversion of personal property – crates of wine.  AKB's response brief does not discuss any of the cases cited by Wireless Toyz that involve conversion claims that are based upon the alleged conversion of money.

And, as a case cited by Wireless Toyz in its Reply shows, this Court has previously ruled that a party failed to plead a statutory conversion claim when that claim was based upon funds held pursuant to a contract and where the conversion claim was not based on some duty

independent of the contract:

> "Conversion is only applicable in cases involving money that is the property of one party but held by another party (e.g., bank accounts, trusts, etc.) which is then wrongfully taken." *Sudden Serv. Inc. v. Brockman Forklifts, Inc*., 657 F.Supp.2d 811, 816 (E.D. Mich.2008). "To support an action for conversion of money, the defendant must have an obligation to return the specific money entrusted by plaintiff to his care." *Llewellyn–Jones v. Metro Property Group*, LLC, 22 F.Supp.3d 760, 788 (E.D.Mich.2014) (quoting *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 722 F.Supp.2d 875, 915 (W.D. Mich.2010)). "A conversion claim 'cannot be brought where the property right alleged to have been converted arises entirely from the [plaintiff's] contractual rights.' " *Id.* (quoting *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, 941 F.Supp.2d 807, 827 (E.D.Ky. 2013)).
> 
> ***Plaintiffs have not alleged that Defendants were holding Plaintiffs' property pursuant to some duty independent of their alleged contractual duty***. Rather, Plaintiffs claim that they paid Defendants $169,000 pursuant to the parties' contract, but that Defendants failed to perform their contractual duties. Plaintiffs have failed to allege that Defendants had an independent duty to return Plaintiffs' funds. In fact, had Defendants performed their alleged contractual duties, they would have had no obligation to return Plaintiffs' funds. Thus, ***the Court finds that Plaintiffs have not pleaded a statutory conversion claim against Defendants.***

*Law Offices of Christopher J. Trainor v. Pittman*, 2015 WL 3948885 at *4 (E.D. Mich. 2015)

(emphasis added).

The *Ledger* case cited by Wireless Toyz in its opening brief also supports dismissal of

AKB's conversion claim:

> In making his case for conversion, plaintiff argues as if to suggest that any time one party is found to have owed another some money following a protracted dispute, the first has converted the amount owed. Such a scenario, however, is far too broad to be encompassed by the tort of conversion. An action for conversion of money cannot be maintained unless there is an obligation on the part of the defendant to "return" specific monies "entrusted" to his care. *Head v. Phillips Camper Sales & Rental, Inc*, 234 Mich.App 94, 111; 593 NW2d 595 (1999). Here, plaintiff's position at trial was simply that he had a contractual right to more money than that paid to him by defendant. Thus, even if plaintiff succeeded in proving that defendant was obliged to pay him certain sums in contract damages, plaintiff never suggested, let alone proved, that defendant had any obligation to "return" to plaintiff monies that plaintiff had "entrusted" to

> defendant's care. This was a contract case, not a tort case, and the trial court properly recognized that distinction.

*Leger v. Image Data Svs.*, 2002 WL 1463555 (Mich. App. 2002).

Accordingly, the Court shall dismiss AKB's conversion claim. To the extent that AKB is owed commissions under the contract, that claim sounds in contract, not tort.

### III. Breach of Fiduciary Duty Claim

In Count III, AKB asserts a breach of fiduciary duty claim against Wireless Toyz. Wireless Toyz challenges this count in a single paragraph, wherein it asserts:

> "[T]he Sixth Circuit has explicitly held, as a matter of law, that relationships between franchisees and franchisors do ***not*** give rise to fiduciary or confidential relationships between the parties." *Ace Hardware Corp. v. Oxford Village Hardware, Inc.,* 2009 WL 236704, *6 n.8 (E.D. Mich. Feb. 2, 2009) (emphasis added) (Rosen, J.) (**Ex. K**) (citing *O'Neal* v. *Burger Chef Systems, Inc.,* 860 F.2d 1341, 1349-1350 (6th Cir. 1988); *McGuirk Oil Co.* v. *Amoco Oil Co.,* 889 F.2d 734, 737-738 (6th Cir. 1989)). Nothing more needs to be said as to AKB's breach of fiduciary duty claim. Count III of AKB's SAC should therefore be dismissed as
> a matter of law pursuant to Fed. R. Civ. P. 12(b)(6).

(Wireless Toyz's Br. at Pg ID 1534) (emphasis in original).

The footnote cited by Wireless Toyz in *Ace* was dicta, in a non-binding district court decision, because the breach of fiduciary duty counterclaim in that case had not been challenged.

Moreover, in its response to the motion, AKB notes the district court in *Ace* "merely held that the traditional franchisor-franchisee relationship itself does not create a fiduciary duty on the part of the franchisor." (AKB's Br. at 22). AKB stresses that it does not contend that Wireless Toyz has a fiduciary duty simply by virtue of being AKB's franchisor. Rather, it alleges that the fiduciary duty arose by virtue of the arrangement under which Wireless Toyz would obtain

commissions from third-party carriers and hold them in a trust accounts for franchisee's like AKB. (*Id*.).

None of the cases cited by Wireless Toyz involve such arrangements. Wireless Toyz has not established that Count III should be dismissed.

**IV.    Action for Accounting Count**

Finally, Wireless Toyz seeks dismissal of Count IV of the SAC, titled "Action for Accounting."

Under Michigan law, an action for accounting is equitable in nature, but whether a plaintiff has stated a cause of action for an accounting must be determined from the facts pled in the plaintiff's complaint." *Boyd v. Nelson Credit Ctrs, Inc*., 132 Mich. App. 774, 779 (1984).

To establish a claim for an accounting, there generally must be "mutual demands, a series of transactions on one side, and payments on the other. Where all the items are on one side, there can be no accounting." *Id.*

"An action for accounting is proper," however, "although the accounts are not mutual, if there are circumstances of great complication or difficulty in the way of adequate relief at law." *McDerment v. Biltmore Properties, Inc*., 2005 WL 3556147 at * 10 (6th Cir. 2005) (citing *Basinger v. Provident Life & Accident Ins. Co.*, 67 Mich. App. 1, 9 (1976)); *see also Digital 2000, Inc. v. Bear Commc'ns, Inc.*, 130 F. App'x 12, 23 (6th Cir. 2005) (noting that under Michigan law, an equitable accounting action is permissible where the accounts at issue "were greatly complicated.").

"An accounting is unnecessary where discovery is sufficient to determine the amounts at issue." *Boyd*, 132 Mich. App. at 779; *see also Digital 2000, Inc., supra*, at 23 (noting that "[i]n

light of the broad discovery available to litigants, accounting actions are of dubious utility" and ruling that an accounting action is not the proper mechanism to recover the money allegedly owed where the accounts at issue were not greatly complicated and the plaintiff could have determined the amount owed through discovery.).

Here, AKB's SAC contains no allegations of a series of mutual demands.  Nor do the allegations in the SAC support an inference that the transactions at issue are so complex that ordinary discovery procedures would be inadequate to allow AKB to determine the amounts allegedly owed to it.  The Court therefore concludes that AKB has failed to state a cause of action for an accounting under Michigan law.  *Boyd*, 132 Mich. App. at 779-80*; McDerment, supra; Thomas v. City of Detroit*, 2007 WL 674593 at * 12 (E.D. Mich. 2007).  The Court shall dismiss Count IV of AKB's SAC.

## CONCLUSION & ORDER

For the reasons set forth above, IT IS ORDERED that Wireless Toyz Franchisee, LLC's Motion to Dismiss AKB Wireless, Inc.'s Second Amended Complaint is GRANTED IN PART AND DENIED IN PART.  The motion is GRANTED to the extent that Court DISMISSES Count II and Count IV.  The motion is DENIED in all other respects.

IT IS SO ORDERED.

                                         S/Sean F. Cox
                                         Sean F. Cox
                                         United States District Judge

Dated:  December 15, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 15, 2015, by electronic and/or ordinary mail.

                                         S/Jennifer McCoy
                                         Case Manager